**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF MASSACHUSETTS**

|  |  |  |
|---|---|---|
| In re: | ) | |
| | ) | Chapter 13 |
| DOMINIQUE J. GNAMAN, | ) | Case No. 19-40930-CJP |
| | ) | |
| Debtor | ) | |
| | ) | |

## MEMORANDUM OF DECISION

The Chapter 13 trustee, Denise M. Pappalardo (the "Trustee") objects to confirmation (Dkt. No. 45) (the "Objection") of the Chapter 13 plan (Dkt. No. 26) (the "Plan") proposed by the debtor, Dominique J. Gnaman (the "Debtor"). The Trustee contends that the Debtor is not committing all of his disposable income to pay unsecured creditors through the Plan in violation of § 1325(b)(1)(B), arguing that the Debtor's means test calculation is understated because it includes a monthly cure payment expense deduction when the Plan contemplates a sale to cure the mortgage arrears at closing.[1] The Objection raises questions of law that can be resolved on the pleadings without an evidentiary hearing.[2] For the reasons discussed, I will sustain the Trustee's Objection.

### I.    FACTS AND PROCEDURAL HISTORY

On June 6, 2019 (the "Petition Date"), the Debtor filed a petition for relief under Chapter 13 of the Bankruptcy Code. Based on the information included in Official Form 122C-1, *Chapter 13 Statement of Your Current Monthly Income and Calculation of Commitment Period*

---

[1] Unless otherwise noted, all section references herein are to Title 11 of the United States Code, 11 U.S.C. §§ 101, *et seq.*, as amended (the "Bankruptcy Code" or the "Code").

[2] The facts referenced in this decision are either undisputed or from the Court's docket of which I have taken judicial notice. *See In re Mailman Steam Carpet Cleaning Corp.*, 196 F.3d 1, 8 (1st Cir. 1999) (observing "[t]he bankruptcy court appropriately took judicial notice of its own docket").

("Form 122C-1"), the Debtor is an above-median debtor whose plan commitment period is five (5) years and whose monthly disposable income is determined under § 1325(b)(3). In Official Form 122C-2, *Chapter 13 Calculation of Your Disposable Income* ("Form 122C-2"), the Debtor takes the following secured debt related deductions: (i) $2,525.55 on Line 33 of Form 122C-2, 1/60th of "all amounts that are contractually due to each secured creditor in the 60 months after [the Debtor] file[s] for bankruptcy" and (ii) $3,264.00 on Line 34 of Form 122C-2, 1/60th of a cure amount of $195,840.00, defined as the "amount that [the Debtor] must pay to a creditor, in addition to the payments listed in line 33, to keep possession of your property." In his Plan, the Debtor proposes to pay Wilmington Trust, NA, successor trustee to Citibank, N.A., as Trustee for Structured Asset Mortgage Investments II Inc., Bear Stearns ALT-A Trust, Mortgage Pass-Through Certificates, Series 2006-4 ("Wilmington") the full amount of its secured claim from proceeds of the proposed sale of the property that secures Wilmington's mortgage at any time up to the conclusion of the Plan's 60-month term. Until the property is sold, Mr. Gnaman also proposes to pay contractual monthly mortgage payments directly to Wilmington.[3] The Trustee argues that because the Debtor is curing through a sale by proposing a lump sum payment, rather than through monthly plan payments, he should not take the cure deduction in the amount of $3,264.00, which, when applied with all of the Debtor's deductions, reduces the Debtor's monthly disposable income under § 1325(b)(2) on Line 45 of Form 122C-2 to ($-1,217.54).

The Plan provides for monthly payments of $320.00 over 60 months. The Debtor's net monthly income on his Schedule J is $319.47. With respect to nonpriority unsecured creditors, the Debtor proposes to pay such holders of allowed general unsecured claims under the Plan

---

[3] Wilmington has also objected to the Debtor's plan for failure to appropriately treat its secured claim under 11 U.S.C. §§ 1322 and 1325 (Bankr. Case No. 19-40930, Dkt. No. 36) (the "Wilmington's Objection"). The Court is entering a separate decision addressing Wilmington's objection.

2

their *pro rata* share of a pot in the amount of $13,410.00, resulting in an estimated dividend of 23.25% based on claims totaling $57,678.13.

After a hearing on the Objection, I took it under advisement.[4]

## II.    JURISDICTION

This Court has jurisdiction over confirmation of a plan, which arises under the Bankruptcy Code, pursuant to 28 U.S.C. §§ 157(a) and 1334 and Rule 201 of the Local Rules of the United States District Court for the District of Massachusetts. The confirmation of a plan and the objections thereto are core proceedings within the meaning of 28 U.S.C. § 157(b)(2)(A) and (L). Accordingly, I have authority to enter a final order on the Objection.

## III.    DISCUSSION

In order for the Court to confirm a Chapter 13 plan, it must meet all the confirmation requirements of § 1325(a) and comply with the rest of the Code. *See* 11 U.S.C. § 1325(a)(1). "[T]he burden is on the debtor to prove that each of the statutory criteria for confirmation is met." *Austin v. Bankowski*, 519 B.R. 559, 563 (D. Mass. 2014). In considering the Trustee's Objection based on the best efforts test under § 1325(b), the initial burden is on the objecting party to present some evidence to support its position, but once the objecting party satisfies this initial burden, the burden shifts back to the debtor, who has the ultimate burden to prove by a preponderance of the evidence that the plan complies with the requirements of 11 U.S.C. § 1325. *See, e.g.*, 8 *Collier on Bankruptcy* ¶ 1325.11 (Richard Levin & Henry J. Sommer eds., 16th ed.) (the objecting "party has, at a minimum, the initial burden of producing satisfactory evidence to support the contention that the debtor is not applying all disposable income to plan payments.").

---

[4] Wilmington subsequently moved to dismiss the case, which motion is pending.

3

The Trustee has objected to confirmation of the Plan, alleging that the Debtor does not devote all of his disposable income and, therefore, the Plan fails to meet the "best efforts" test under § 1325(b)(1).[5] In relevant part, § 1325(b)(1) requires that "[i]f the trustee . . . objects to the confirmation of the plan, then the court may not approve the plan unless, as of the effective date of the plan . . . the plan provides that all of the debtor's projected disposable income to be received in the applicable commitment period . . . will be applied to make payments to unsecured creditors under the plan."  11 U.S.C. § 1325(b)(1)(B).

While § 1325(b)(1) does not define "projected" disposable income, § 1325(b)(2)(A)(i) provides that "[f]or purposes of this subsection, the term 'disposable income' means current monthly income received by the debtor . . . less amounts reasonably necessary to be expended . . . for the maintenance or support of the debtor or a dependent of the debtor."  11 U.S.C. § 1325(b)(2)(A)(i). "[C]urrent monthly income" in § 1325(b)(2) is a defined term under § 101(10A)[6] and is determined by reference to the income received by a debtor during the six months preceding the filing, less "amounts reasonably necessary to be expended . . . for the

---

[5] The Debtor does not propose to pay 100% of all allowed unsecured claims pursuant to his Plan and, therefore, it is undisputed that the Debtor must pay all his "disposable income" to the Plan to overcome the Trustee's objection. *See* 11 U.S.C. § 1325(b)(1). Section 1325(b)(1) states in its entirety:

> (1) If the trustee or the holder of an allowed unsecured claim objects to the confirmation of the plan, then the court may not approve the plan unless, as of the effective date of the plan--
>
> (A) the value of the property to be distributed under the plan on account of such claim is not less than the amount of such claim; or
>
> (B) the plan provides that all of the debtor's projected disposable income to be received in the applicable commitment period beginning on the date that the first payment is due under the plan will be applied to make payments to unsecured creditors under the plan.

11 U.S.C. § 1325(b)(1).

[6] The term "current monthly income" is defined in relevant part as "the average monthly income from all sources that the debtor receives (or in a joint case the debtor and the debtor's spouse receive) without regard to whether such income is taxable income, derived" during the six months preceding the filing of the petition.  11 U.S.C. § 101(10A).

maintenance or support of the debtor or a dependent of the debtor . . . ." 11 U.S.C. §§ 101(10A), 1325(b)(2).

Furthermore, for debtors with current monthly income over the applicable median income threshold, such as the Debtor in this case, "disposable income" is determined by § 1325(b)(2) in conjunction with subsection (b)(3), which incorporates the "means test" formula under § 707(b)(2).[7] 11 U.S.C. § 1325(b)(2) and (b)(3). Subparagraphs (I) and (II) of § 707(b)(2)(A)(iii) permit certain deductions from an above-median debtor's current monthly income related to secured debt for average monthly payments during the 60 months of a plan on account of secured debt scheduled as contractually due and "any additional payments to secured creditors necessary for the debtor, in filing a plan . . . , to maintain possession of the debtor's primary residence, motor vehicle, or other property necessary for the support of the debtor and the debtor's dependents, that serves as collateral for secured [debt]." 11 U.S.C. § 707(b)(2)(A)(iii)(I) and (II).

With respect to the import of the use of the term "projected" to modify "disposable income" in § 1325(b)(1), the Supreme Court in *Hamilton v. Lanning* concluded that it provides an avenue for a court to adjust a debtor's current monthly income to take into account changes in the debtor's income and expenses that are known or "virtually certain" to occur at the time of confirmation. 560 U.S. 505, 524 (2010) (holding that "when a bankruptcy court calculates a debtor's projected disposable income, the court may account for changes in the debtor's income or expenses that are known or virtually certain at the time of confirmation"); *see also, Ransom v. FIA Card Services, N.A.*, 562 U.S. 61, 68, 80 (2011) ("resolv[ing] a split of authority over whether a debtor who does not make loan or lease payments on his car may claim the deduction

---

[7] With respect to expense amounts that above-median debtors may deduct, reference must be made, at least in part, to the National and Local Standards promulgated by the IRS in accordance with subparagraphs (A) and (B) of the means test under § 707(b)(2), but those amounts are not at issue in the Trustee's objection in this case. *See* 11 U.S.C. § 1325(b)(3).

5

for vehicle-ownership costs under the means test standardized expenses" and finding that an expense is not applicable to a debtor who will not incur any such costs during the bankruptcy plan). The Supreme Court in *Hamilton v. Lanning* found a forward-looking approach to calculating a debtor's disposable income to be more persuasive in the context of § 1325(b)(2) based on practice prior to the 2005 amendments to the Code and the ordinary meaning of the term "projected," which is not defined in the Code. *Hamilton v. Lanning*, 560 U.S. at 514, 517. The Supreme Court rejected a "mechanical" approach to the § 1325(b)(2) calculation considering the past average monthly disposable income of a debtor multiplied by the number of months in a debtor's plan as conflicting with the § 1325 and leading to "senseless results." *Id*. at 517, 520-21. However, the Supreme Court clarified that such instances where a court "may go further" in making adjustments to the statutory formula for disposable income should be made "only in unusual cases" where there is "known or virtually certain information about the debtor's future income and expenses." *Id.* at 519.

The Trustee objects only to the deduction related to Debtor's payments to maintain possession of the Property in the amount of $3,264.00, the result of the Debtor's calculation of 1/60th of $195,840.00, which is the amount required to cure the pre-petition arrearage component of Wilmington's secured claim. Form 122C-2, Line 34. Thus, only § 707(b)(2)(A)(iii)(II) is at issue with the deduction taken by the Debtor. The Trustee asserts that the $3,264.00 deduction is impermissible because the Debtor is not actually making any cure payments under the Plan and, without that deduction, that the monthly disposable income figure would instead total $3,750.46, resulting in $225,027.60 being available to unsecured creditors and requiring the Debtor to provide them a 100% dividend in order to confirm a plan. The Trustee notes that the Debtor would need to propose a plan that provides a payment of $1,140 over 60 months in order to ensure unsecured creditors would receive a 100% dividend based on

the claims as filed. Currently, the Plan provides for payments of $320.00 for 60 months and the Debtor's excess income from schedules is $319.47.

The Trustee relies on *In re Kramer* to support her assertion that the Debtor is not providing all of his projected disposable income towards paying unsecured creditors. 495 B.R. 121, 125 (Bankr. D. Mass. 2013), *aff'd sub nom. Kramer v. Bankowski (In re Kramer)*, 505 B.R. 614 (B.A.P 1st Cir. 2014) (Bailey, J.). In *Kramer*, the court held that the debtors were not permitted to deduct payments from their projected disposable income calculation for a second mortgage that they proposed to "strip off" under their plan, because confirmation would terminate the payments. *See id*. The debtors in the *Kramer* case had no intention of paying the second mortgage under the plan, and upon confirmation, the debtors' monthly expenses would substantially decrease, a change in the debtors' circumstances that the Court determined should accrue to the benefit of unsecured creditors. *See id*. The *Kramer* court adopted a forward-looking approach in examining the expense deduction, relying on the language in *Lanning* in accounting for "known or virtually certain" changes at confirmation, and found that the proposed lien-stripping, implemented by the confirmation of the plan itself, met the "virtually certain" at time of confirmation condition, disallowing the deduction for payments "scheduled as contractually due." *Id*. at 125–26.

The Trustee notes that a number of other courts have held that deductions on secured claims were impermissible where property is being stripped off or surrendered. The Trustee appears to argue that the circumstance where property is being stripped off or surrendered is analogous to Wilmington's claim being paid through the sale of the Property, rather than as a monthly expense through cure and maintain payments under the Plan, citing *Darrohn v. Hildebrand (In re Darrohn)*, 615 F.3d 470, 477 (6th Cir. 2010) (concluding it was impermissible to include mortgage payments for properties the debtors intended to surrender because the

7

intended surrender represented a change in the debtors' expenses "known or virtually certain at the time of confirmation" (quoting *Lanning*, 560 U.S. at 519)); *In re Blumer*, 453 B.R. 429, 432 (Bankr. D. Kan. 2011) (finding "phantom" mortgage expenses that debtors would not have to pay on home which they proposed to surrender could not be deducted as "amounts scheduled as contractually due to secured creditors in calculating projected disposable income."); *Morris v. Quigley (In re Quigley)*, 673 F.3d 269, 274 (4th Cir. 2012) (finding that debtor should not be permitted to deduct secured debt payments that she would not be making because she intended to surrender her vehicles when calculating her projected disposable income; otherwise, unsecured creditors would be denied payments that the debtor clearly could make, based on her choice to surrender the vehicles); *In re Sterrenberg*, 471 B.R. 131 (Bankr. E.D.N.C. 2012) (in the context of § 707 dismissal request, finding that the debtor could not deduct monthly payments on collateral that she intended to surrender); *but see* 6 Collier on Bankruptcy ¶ 707.04 (noting that § 707(b)(2)(A)(iii)(I) "makes no distinction between payments on property that the debtor intends to retain and property the debtor will surrender; its plain language literally requires that all payments contractually due to secured creditors during the relevant period be deducted").

      The Debtor disputes that the expense deduction is improper because it appears he does not view the Debtor proposing to sell the Property through his Plan, and curing his prepetition default by that mechanism, as being any different than curing by monthly cure payments, and he concludes he should be entitled to take the deduction. The Debtor argues that the Trustee's reliance on *Kramer* is misplaced because the mortgagee in that matter would not receive any payments in a strip off situation, whereas the sale would pay Wilmington's claim in full in this case.

      Section 707(b)(2)(A)(iii)(II) allows a debtor to deduct additional payments "necessary . . . to maintain possession of the debtor's primary residence, motor vehicle, or other property

necessary for the support of the debtor and the debtor's dependents necessary for the support of the debtor and the debtor's dependents." 11 U.S.C. § 707(b)(2)(A)(iii)(II). This language, which expressly conditions availability of the deduction on the collateral being necessary for support, is more restrictive than subparagraph (I) which focuses on payments "scheduled as contractually due." *Id*.

Here, the Debtor's Plan contemplates making a lump sum payment from sale proceeds to cure the pre-petition interest portion of the Wilmington secured claim. The Debtor is already taking the deduction for mortgage payments "scheduled as contractually due" prior to the sale, and the Trustee does not object to that deduction. I conclude that, in this case, the Debtor may not take a deduction from monthly income for cure payments that are not actually being made or necessary for the Debtor to maintain possession of the Property under the Plan. The Plan itself provides that the Debtor need only pay the cure amount upon an intended sale of the Property, at which time the Debtor has no intention to retain possession of the Property. *Cf. In re Marchionna*, 393 B.R. 512, 521 (Bankr. N.D. Ohio 2008) (holding that payments to cure arrearages on principal residence may not be deducted on Form B22 when the debtor intends to surrender the property); *In re Burden*, 380 B.R. 194, 201 (Bankr. W.D. Mo. 2007) (in dicta presuming that debtors who intend to surrender property may not deduct on their means test form expenses for payment of prepetition arrearages)*; but see In re Goble*, 401 B.R. 261, 273 (Bankr. S.D. Ohio 2009) (allowing cure expense deduction where the surrender of property is at issue). The plain language appears to limit a cure deduction to monthly expenses necessary to maintain a property that the debtor intends to keep.

As the Debtor is not making cure payments through the plan and the Debtor is not retaining the property, the cure payment deduction is not available to him.[8]

## IV. CONCLUSION

For the reasons stated above, I will sustain the Trustee's Objection. A separate order will enter in accordance with this decision.

Dated: March 31, 2022

By the Court,

Christopher J. Panos
United States Bankruptcy Judge

---

[8] In proposing a sale plan that provides for a cure payment to be paid from sale proceeds, I recognize that, because the Debtor will not be able to deduct from disposable income amounts that the Debtor may otherwise have proposed to have been paid to cure arrearages, the Debtor could lose some of the value of a homestead exemption because the cure payment will be paid from proceeds of sale while the Debtor will be required to increase the plan payment to be funded from current income if that is feasible.

10